IN THE UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

---

Natalie Forte,                                                    Court File No.

                Plaintiff,

                              **NOTICE OF REMOVAL**

      v.

Access North Center for Independent
Living of Northeastern Minnesota ,

                Defendants.

---

**TO: THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MINNESOTA.**

<u>**NOTICE OF REMOVAL**</u>

**PLEASE TAKE NOTICE** that pursuant to 28 U.S.C. § 1441(a), Defendant Access North Center for Independent Living of Northeastern Minnesota ("Access North") removes to this Court the state court action described below. As grounds for removal, Access North states as follows:

<u>**BACKGROUND**</u>

1.      On February 17, 2022 Plaintiff Natalie Forte ("Plaintiff") commenced a civil action in St. Louis County District Court, Sixth Judicial District, State of Minnesota, an action entitled *Natalie Forte v. Access North Center for Independent Living of Northeastern Minnesota* (the "Action"). A true and correct copy of Plaintiff's Summons and Complaint served upon Access North, and Access North's Answer to Plaintiff's Complaint, are attached as **Exhibit A** and **Exhibit B**, respectively. No further proceedings

1

have taken place in the state action, other than Access North's filing of its Answer and Notice of Removal in state court on March 18, 2022.

2.    The Complaint may be properly removed on the basis of federal question jurisdiction under 28 U.S.C. § 1441(a) and 28 U.S.C. § 1331. This matter involves questions of federal law that arise under Family Medical Leave Act, 29 U.S.C. § 2615(a)(2).

3.    This Notice is timely filed within 30 days of service of the Summons and Complaint on Access North. 28 U.S.C. § 1446(b).

4.    For the foregoing reasons, Plaintiff's claims against Access North are properly removed to this Court as arising under the laws of the United States and presenting federal questions pursuant to 28 U.S.C. § 1331.

5.    Further, the District Court may act in its discretion by exercising supplemental jurisdiction over any state law claims not completely preempted. 28 U.S.C. § 1367.

6.    Access North submits this notice and petition without waiving any defenses to the claims asserted by Plaintiff, or conceding that Plaintiff has pleaded claims upon which relief may be granted.

7.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the alleged events giving rise to Plaintiff's claims occurred in this judicial district.

8.    In accordance with 28 U.S.C. § 1446, on March 18, 2022, Access North served a copy of this Notice of Removal upon Plaintiff's counsel of record by e-mailing and depositing said Notice in the U.S. Mail addressed to Plaintiff's counsel of record.

9.    In accordance with 28 U.S.C. § 1446, on March 18, 2022, Access North filed a copy of this Notice of Removal with the St. Louis County Court Administrator, Sixth Judicial District, State of Minnesota, by electronic filing.

10.    Access North has paid the prerequisite court fees attendant to the filing of this Notice of Removal.

**WHEREFORE**, Defendant Access North Center for Independent Living of Northeastern Minnesota respectfully requests that the above-entitled action now pending against it in St. Louis County District Court, Sixth Judicial District, State of Minnesota, be removed to this Court.

Dated: March 18, 2022

LIND, JENSEN, SULLIVAN & PETERSON
A Professional Association

*/s/ William L. Davidson*
William L. Davidson, No. 201777
Lauren M. Hoglund, No. 0399562
Attorneys for Defendant Access North Center
for Independent Living of Northeastern
Minnesota
1300 AT&T Tower
901 Marquette Avenue South
Minneapolis, MN 55402
(612) 333-3637
william.davidson@lindjensen.com
lauren.hoglund@lindjensen.com

STATE OF MINNESOTA                           DISTRICT COURT

COUNTY OF SAINT LOUIS                SIXTH JUDICIAL DISTRICT

---

Natalie Forte,

         Plaintiff,

      v.

Access North Center for Independent
Living of Northeastern Minnesota,

         Defendant.

Case Type: Employment
Court File No.:_____

**COMPLAINT**

---

      Plaintiff Natalie Forte, as and for her Complaint against Defendant Access North

Center for Independent Living of Northeastern Minnesota, states and alleges as follows:

### **PARTIES, JURISDICTION, AND VENUE**

1.     Plaintiff Natalie Forte (hereinafter "Forte") is an individual residing in St. Louis

      County, Minnesota.

2.     Defendant Access North Center for Independent Living of Northeastern

      Minnesota (hereinafter, "Access North"), is a Minnesota nonprofit corporation

      that maintains a registered office located at 1309 East 40th Street, Hibbing,

      Minnesota 55746.

3.     Jurisdiction is proper in part pursuant to 29 U.S.C. § 2617(a)(2).

4.     Venue is proper pursuant to Minn. Stat. § 542.09 as the allegations that form the

      basis of this Complaint occurred in St. Louis County, Minnesota.

1

**EXHIBIT
A**

## FACTUAL ALLEGATIONS

5.     Forte, who is pregnant and due in or around early February 2022, began working for Access North in 2016. Forte worked forty hours per week and earned $17 per hour.

6.     Forte is a member of a protected class on the basis of sex as that term is defined by the Minnesota Human Rights Act (hereinafter, "MHRA").

7.     Access North has over fifty employees and Forte worked the requisite 1250 hours in the prior twelve months to qualify for Family Medical Leave Act (hereinafter, "FMLA') leave, which Access North was obligated to provide. Forte was also an "employee" as that term is defined by Minn. Stat. § 181.940.

8.     Near the end of her pregnancy, Forte contacted human resources several times regarding her health benefits. Forte was told that she would need to use her paid time off and/or go on short-term disability to cover her maternity leave.

9.     Forte then contracted COVID-19 in December 2021, and was required to quarantine for ten days, concluding on or around December 31, 2021.

10.     Forte coordinated her quarantine with Access North's COVID-19 coordinator, Kathy (Last Name Unknown). After taking two unpaid days off due to COVID-19, Forte began working from home.

11.     During that time, Forte's supervisor, Melissa Canfield (hereinafter, "Canfield"), called Forte at home and pressed her regarding how she was working remotely.

Forte was supposed to work twenty hours of office time and another twenty hours with clients.

12. Although Forte coordinated her quarantine with Kathy, Canfield informed Forte that if she was not working with clients, she would need to take leave under the Family Medical Leave Act (hereinafter, "FMLA").

13. Forte, 36-weeks pregnant at this point, returned to work the first week in January 2022.

14. That week, on or around January 5, 2022, a coworker, Kiri Basore (hereinafter, "Basore") contacted Forte while she was working with a client. Basore was writing a consumer directed community support plan (hereinafter, "CDCS") for Forte's son.

15. Forte told Basore that she was running behind with work due to the snowstorm in the area and needed to reschedule.

16. Basore connected with Forte at approximately 2 p.m. that day and they discussed the CDCS for Forte's son for approximately forty minutes.

17. After the conversation with Basore, Forte went back to work. However, she forgot to clock-out while speaking with Basore. Forte was not worried about forgetting to clock-out to handle personal matters. It was past practice at Access North to make revisions to time logs at the end of the day before submitting them to supervisors.

18. At or around 4 p.m. on or around January 5, 2022, Forte was contacted by Cansfield and human resources manager, Vonda Twa (hereinafter, "Twa"). Cansfield and Twa informed Forte that she was terminated for alleged fraudulent timekeeping.

19. Forte had zero behavioral issues while working at Access North. Furthermore, it was accepted past practice to edit time logs at the end of the day before submitting to superiors.

20. Forte was not terminated for fraudulent timekeeping. Forte was terminated due to her pregnancy and upcoming maternity leave, and/or for following Access North's COVID-19 protocol – resulting in a two-week quarantine – approximately four-weeks before starting her maternity leave.

21. As a result of Access North's conduct, Forte has been left unemployed immediately after the holidays while in a pandemic. Furthermore, Forte has been subjected to additional stress, anxiety and sleeplessness, all of which are occurring at the end of her pregnancy.

22. As a direct and proximate result of Access North's conduct, Forte has suffered damages, including but not limited to, economic damages, other compensatory damages, damages for mental anguish and suffering, liquidated damages, other statutory and punitive damages, costs of suit, and attorney's fees.

## CAUSE OF ACTION I
## FMLA Discrimination (29 U.S.C. § 2615(a)(2))

23.     Paragraphs 1 through 22 are incorporated herein by reference.

24.     An FMLA discrimination claim arises when an employer takes adverse action against an employee because the employee exercises rights to which he is entitled under the FMLA. *Pulczinski v. Trinity Structural Towers, Inc.*, 691 F.3d 996, 1006 (8th Cir. 2012).

25.     Forte engaged in statutorily-protected conduct and exercised rights to which she was entitled under the FMLA when she informed Access North that she was pregnant and needed to take maternity leave.

26.     Access North's actions, as described herein, constituted an adverse employment action.

27.     There is a causal connection between Forte's statutorily-protected conduct and Access North's adverse employment action.

28.     As a direct and/or proximate result of Access North's conduct, Forte has suffered damages in excess of $50,000 to be proved with further specificity at trial, and additionally seeks civil penalties and injunctive relief as allowed by statute.

## CAUSE OF ACTION II
## Unfair Employment Practice - Discriminatory Discharge
### *(Minn. Stat. § 363A.08 Subd. 2)*

29.     Paragraphs 1 through 28 are incorporated herein by reference.

30.     Forte is a member of a protected class on the basis of sex as the term is defined

5

by the MHRA.

31.    Access North took adverse employment action against Forte when she was terminated for inaccurate timekeeping instead of allowing her to correct her logs, a past practice utilized by other employees that were not members of the protected class.

32.    Furthermore, Forte was replaced, or alternatively, her work was reassigned, to non-members of the protected class.

33.    As a direct and/or proximate cause of Access North's conduct, Forte has suffered damages in excess of $50,000 to be proved with further specificity at trial, and additionally seeks civil penalties and injunctive relief as allowed by statute.

## CAUSE OF ACTION III
### Unfair Employment Practice - Reprisal
### *(Minn. Stat. § 363A.15)*

34.    Paragraphs 1 through 33 are incorporated herein by reference.

35.    Forte engaged in statutorily-protected conduct and exercised rights to which she was entitled under the MHRA when she informed Access North that she was pregnant and needed to take maternity leave.

36.    Access North's actions, as described herein, constituted an adverse employment action.

37.    There is a causal connection between Forte's statutorily-protected conduct and Access North's adverse employment action.

38. As a direct and/or proximate result of Access North's conduct, Forte has suffered damages in excess of $50,000 to be proved with further specificity at trial, and additionally seeks civil penalties and injunctive relief as allowed by statute.

## CAUSE OF ACTION IV
### Violation of Parenting Leave and Accommodations
### (Minn. Stat. § 181.941 Subd. 3)

39. Paragraphs 1 through 38 are incorporated herein by reference.

40. Forte engaged in statutorily-protected conduct and exercised rights to which she was entitled under Minn. Stat. § 181.940 et seq. when she informed Access North that she was pregnant and needed to take maternity leave.

41. Access North's actions, as described herein, constituted an adverse employment action.

42. There is a causal connection between Forte's statutorily-protected conduct and Access North's adverse employment action.

43. As a direct and/or proximate result of Access North's conduct, Forte has suffered damages in excess of $50,000 to be proved with further specificity at trial, and additionally seeks civil penalties and injunctive relief as allowed by statute.

## CAUSE OF ACTION V
### Minnesota OSHA Discrimination
### (Minn. Stat. § 182.669 Subd. 1)

44. Paragraphs 1 through 43 are incorporated herein by reference.

45. Forte was entitled to work in conditions of employment and a place of

employment free from recognized hazards that are causing or are likely to cause death or serious injury or harm to its employees. Minn. Stat. § 182.653 Subd. 2.

46. Forte was entitled to work in a workplace which complied with occupational safety and health standards and rules promulgated pursuant to OSHA. Minn. Stat. § 182.653 Subd. 3.

47. Forte was obligated to comply with OSHA standards and all rules and orders issued pursuant thereto. Minn. Stat. § 182.654 Subd. 2.

48. Minn. Stat. § 182.669, protects employees from discrimination for exercising their rights authorized by provisions inclusive of, but not limited to, those cited above.

49. Forte engaged in statutorily-protected conduct when she complied with Access North's recommendations to protect her workplace from COVID-19.

50. Access North terminated Forte for this conduct, and any explained fraudulent record keeping was merely pretext for adverse employment action.

51. Fortes' statutorily-protected conduct and Access North's adverse employment action were causally connected.

52. As a direct and/or proximate result of Access North's conduct, Forte has suffered damages in excess of $50,000 to be proved with further specificity at trial.

## CAUSE OF ACTION VI
## Alternatively Expanding the Public Policy Exception to the At-Will Doctrine to Cases Involving Employees Who Are Terminated for Abiding by Covid-19 Rules and Regulations

53.    Paragraphs 1 through 52 are incorporated herein by reference.

54.    This claim is brought in the alternative if the Minnesota OSHA do not provide a remedy for Forte. It is an argument for the extension of existing law.

55.    Minnesota recognizes a public policy exception to the at-will employment doctrine, but only for employees who refuse to participate in an activity that the employee, in good faith, believes violates any state or federal law or regulation adopted pursuant to law. *Phipps c. Clark Oil & Refining Corp.*, 408 N.W.2d 569, 571 (Minn. 1987).

56.    The COVID-19 pandemic resulted in the issuance of several Executive Orders, which were in full force and effect during the relevant time period of the facts in this Complaint.

57.    It is unclear, however, that workers, such as Forte, who comply with the duties and obligations required of them under existing law, are protected from retaliation, versus workers who complain about or refuse to work under conditions which might be in violation of law.

58.    It is therefore appropriate for the Court, if it determines that existing law does not provide a remedy, to narrowly extend the public policy exception to those cases, such as here, where the employer retaliates against its employee for the

employee's compliance with the employee's duties and obligations under laws related to the COVID-19 pandemic. *See Dukowitz v. Hannon Sec. Servs.*, 841 N.W.2d 147, 151-155 (Minn. 2014).

**WHEREFORE**, Forte requests a **JURY TRIAL** on her claims and judgment against Access as follows:

1.   As to Cause of Action I, for judgment in favor of Forte in an amount greater than $50,000.00 to be proved with further specificity at trial, and; for an order granting any other appropriate legal or equitable relief pursuant to statute;

2.   As to Cause of Action II, for judgment in favor of Forte in an amount greater than $50,000.00 to be proved with further specificity at trial, and; for an order directing Access to cease and desist from unfair employment practices, to pay civil penalties, and any other appropriate legal or equitable relief pursuant to *Minn. Stat. § 363A.29 Subds. 3 through 6*. Forte intends to move to amend her Complaint to assert a claim for punitive damages;

3.   As to Cause of Action III, for judgment in favor of Forte in an amount greater than $50,000.00 to be proved with further specificity at trial, and; for an order directing Access to cease and desist from unfair employment practices, to pay civil penalties, and any other appropriate legal or equitable relief pursuant to *Minn. Stat. § 363A.29 Subds. 3 through 6*. Forte intends to move to amend her Complaint to assert a claim for punitive damages;

4.    As to Cause of Action IV, for judgment in favor of Forte in an amount greater than $50,000 to be proved with further specificity at trial, and; for an order granting any other appropriate legal or equitable relief;

5.    As to Cause of Action V, for judgment in favor of Forte in an amount greater than $50,000 to be proved with further specificity at trial, and; for an order granting any other appropriate legal or equitable relief;

6.    As to Cause of Action VI, for judgment in favor of Forte in an amount greater than $50,000 to be proved with further specificity at trial, and; for an order granting any other appropriate legal or equitable relief;

7.    For Forte's costs, disbursements and attorney's fees incurred herein;

8.    For such other and further relief as the Court deems just and equitable.


Dated: February 17, 2022                    AHLBERG LAW, PLLC


                                            */s/ Ryan H. Ahlberg*
                                            Ryan H. Ahlberg (#0386520)
                                            Union Plaza Building, Suite 300
                                            333 Washington Avenue North
                                            Minneapolis, Minnesota 55401
                                            (612) 900-2269
                                            rahlberg@ahlberglaw.com
                                            Attorney for Plaintiff

## **ACKNOWLEDGEMENT**

The undersigned acknowledges that pursuant to Minn. Stat. § 549.211 sanctions may be awarded by the Court for violation of said section.

Dated: February 17, 2022

                                       */s/ Ryan H. Ahlberg*
                                       Ryan H. Ahlberg (#0386520)

**STATE OF MINNESOTA**                    **DISTRICT COURT**

**COUNTY OF SAINT LOUIS**                 **SIXTH JUDICIAL DISTRICT**

_____

Natalie Forte,                                        CASE TYPE: Employment
                                                                    Court File No.:
                    Plaintiff,                                              Judge
vs.

Access North Center for Independent Living of              **ANSWER**
Northeastern Minnesota,

                    Defendant.

_____

      Defendant, Access North Center for Independent Living of Northeastern Minnesota ("Access North"), as and for its Answer to Plaintiff Natalie Forte's Complaint (the "Complaint"), states and alleges as follows:

      Access North denies each allegation of Plaintiff's Complaint except to the extent admitted herein.

## PARTIES, JURISDICTION, AND VENUE

      1.     Access North admits on information and belief the allegations in Paragraph 1 of Plaintiff's Complaint.

      2.     Access North admits the allegations in Paragraph 2 of Plaintiff's Complaint.

      3.     Access North admits the allegations in Paragraph 3 of Plaintiff's Complaint.

      4.     Access North admits the allegations in Paragraph 4 of Plaintiff's Complaint.

## FACTUAL ALLEGATIONS

      5.     As to Paragraph 5, Access North admits that Plaintiff was pregnant. Upon information and belief, Plaintiff was due in late February, and not early February. Access North denies the remaining allegations in Paragraph 5 of Plaintiff's Complaint. Access North affirmatively states that Plaintiff began working for Access North in April, 2018. She first

EXHIBIT
B

worked part-time at roughly 15-20 hours per week and earned $14 per hour. She was promoted to a full-time position in August 2021, earning $16.75 per hour.

6.     Access North states that the allegations in Paragraph 6 of Plaintiff's Complaint contain legal conclusions to which no response is required.

7.     Access North admits that it has more than fifty employees and that Plaintiff worked at least 1250 hours in the previous 12 months. Access North states that the remainder of the allegations in Paragraph 7 of Plaintiff's Complaint contain legal conclusions to which no response is required.

8.     Access North admits that Plaintiff contacted human resources regarding her health benefits. Access North denies the remainder of the allegations in Paragraph 8 of Plaintiff's Complaint, and affirmatively states that it provided Plaintiff with information regarding parenting leave consistent with the law and its obligations, including Plaintiff's need to utilize any accrued PTO she might have concurrent with her FMLA leave. Access North further provided information to Plaintiff concerning possible eligibility for short-term disability.

9.     Access North states that Plaintiff advised that she was exposed to Covid-19 on December 17. 2021, and that she was given the opportunity with supervisor approval to work remotely while quarantining consistent with Access North and CDC guidelines.

10.     Access North admits the allegations in Paragraph 10 of Plaintiff's Complaint that Plaintiff coordinated her need to quarantine with Cathy Baudeck, an Access North employee who coordinated Access North's handling of reports of Covid-19 positive tests and exposure. Access North affirmatively states that Baudeck advised Plaintiff she could work from home as long as she had the ability to do so and communicated with her supervisor, Melissa Canfield.

11.     As to Paragraph 11 of Plaintiff's Complaint, Access North admits that Canfield was in contact with Plaintiff regarding the need for Plaintiff to keep her time-entries up to date

while working remotely, a request for a work plan from Plaintiff, and to learn about her plans to return to work. Access North denies that Canfield called Plaintiff at home.

12. Access North states that Canfield advised Plaintiff on December 29, 2021 of the need for a work plan for any further remote work, and that if Plaintiff remained sick and unable to return to work on December 30, 2021, she would need to provide a doctor's note and potentially begin the FMLA process.

13. Access North denies the allegation in Paragraph 13 of the Complaint that Plaintiff returned to work the first week in January as her timecard reflects she claimed she worked with a client directly on December 29, 2021. Access North is without sufficient information or knowledge to admit or deny how many weeks Plaintiff was pregnant as of the first week in January 2022.

14. With respect to the allegations in Paragraph 14 of the Complaint, Access North admits that another employee, Kiri Basore, worked on a CDCS plan with Plaintiff for Plaintiff's son. Basore called Plaintiff early the afternoon of January 4, 2022, and agreed to push the call back until 2:30 p.m. at Plaintiff's request. The two spoke by phone later that afternoon for approximately 34 minutes working on the CDCS plan for Plaintiff's son.

15. Access North denies the allegation in Paragraph 15 of Plaintiff's Complaint that Plaintiff told Basore that Plaintiff was running behind with work due to a snowstorm.

16. With respect to the allegations in Paragraph 16 of Plaintiff's Complaint, Access North states that Plaintiff and Basore spoke by phone on January 4, 2022 beginning at approximately 2:30 p.m. and for approximately 34 minutes working on the CDCS plan for Plaintiff's son.

17. Access North is without sufficient information or knowledge to admit or deny the allegations in Paragraph 17 of the Complaint as to what Plaintiff claims she did or the reasons for her conduct. Access North states that when working with 245D consumers, it is required for

employees to clock in and out in live time, and that if someone misses a clock in or out that this should be reported immediately to a supervisor. Access North denies the allegation in Paragraph 17 of the Complaint that permitted practice was to wait until the end of the day to edit or revise time logs after the fact concerning services provided to 245D consumers. Access North further states that Plaintiff was directed to enter and record her time accurately.

18.     Access North generally admits Paragraph 18 of Plaintiff's Complaint, but states that Canfield and Vonda Twa called and spoke with Plaintiff on January 4, 2022, and not January 5. Access North further states that Canfield and Twa questioned Plaintiff about her being clocked in that day as providing services to a 245D consumer when Plaintiff was separately working on a plan for Plaintiff's son, and terminated Plaintiff.

19.     Access North denies the allegations in Paragraph 19 of Plaintiff's Complaint. Access North affirmatively states that Plaintiff was warned repeatedly for not keeping her time tracker and calendar up to date. Access North specifically denies the allegation that it was a permitted practice to wait until the end of the day to edit or revise time logs after the fact concerning services provided to 245D consumers.

20.     Access North denies the allegations in Paragraph 20 of Plaintiff's Complaint. Access North states that Plaintiff was terminated for her conduct in not accurately reporting her time working and for billing for services not provided.

21.     As to Paragraph 21 of Plaintiff's Complaint, Access North admits on information and belief that Plaintiff was unemployed for a time following her termination. Access North is without information or knowledge regarding the remaining allegations in Paragraph 21 and puts Plaintiff to her burden of proof regarding those allegations, including her claim for damages.

22.     Access North denies Paragraph 22 of Plaintiff's Complaint.

## CAUSE OF ACTION I
## FMLA Discrimination (29 U.S.C. § 2615 (a)(2))

23.     Access North states that Paragraph 23 of Plaintiff's Complaint requires no answer. To the extent an Answer is required, Access North incorporates its preceding responses to the allegations in Paragraphs 1 through 22.

24.     Access North states that the allegations in Paragraph 24 of Plaintiff's Complaint contain legal conclusions to which no response is required. To the extent a response is required, Access North denies any allegation that it violated the FMLA.

25.     Access North denies the allegations in Paragraph 25 of Plaintiff's Complaint alleging or suggesting that it violated the FMLA.

26.     Access North admits that a termination can be an adverse employment action, but denies the allegations in Paragraph 26 of Plaintiff's Complaint alleging that it violated the FMLA.

27.     Access North denies the allegation in Paragraph 27 of Plaintiff's Complaint.

28.     Access North denies the allegation in Paragraph 28 of Plaintiff's Complaint.

## CAUSE OF ACTION II
## Unfair Employment Practice- Discriminatory Discharge
## (Minn. Stat. § 363A.08 Subd. 2)

29.     Access North states that Paragraph 29 of Plaintiff's Complaint requires no answer. To the extent an Answer is required, Access North incorporates its preceding responses to the allegations in Paragraphs 1 through 28.

30.     Access North states that the allegations in Paragraph 30 of Plaintiff's Complaint contain legal conclusions to which no response is required.  To the extent a response is required, Access North denies any allegation that it committed an unfair employment practice, violated the Minnesota Human Rights Act, or discriminated against Plaintiff on the basis of her sex or gender.

31.     With respect to Paragraph 31, Access North admits that it terminated Plaintiff for inaccurate timekeeping and that a termination can be an adverse employment action, but it denies the allegation that its termination of Plaintiff was an unfair employment practice.

32.     Access North denies the allegations in Paragraph 32 of Plaintiff's Complaint that she was replaced by a non-member of her claimed protected class.

33.     Access North denies the allegations in Paragraph 33 of Plaintiff's Complaint.

**CAUSE OF ACTION III**
**Unfair Employment Practice- Reprisal**
**(Minn. Stat. § 363A.15)**

34.     Access North states that Paragraph 34 of Plaintiff's Complaint requires no answer. To the extent an Answer is required, Access North incorporates its preceding responses to the allegations in Paragraphs 1 through 33.

35.     Access North states that the allegations in Paragraph 35 of Plaintiff's Complaint contain legal conclusions to which no response is required.  To the extent a response is required, Access North denies any allegation that it committed an unfair employment practice, violated the Minnesota Human Rights Act, or engaged in any reprisal.

36.     With respect to the allegations in Paragraph 36 of Plaintiff's Complaint, it contains legal conclusions to which no response is required. To the extent a response is required, Access North admits that it terminated Plaintiff and that a termination can be an adverse employment action, but it denies the allegation that its termination of Plaintiff was an unfair employment practice.

37.     Access North denies the allegations in Paragraph 37 of Plaintiff's Complaint.

38.     Access North denies the allegations in Paragraph 38 of Plaintiff's Complaint.

**CAUSE OF ACTION IV**
**Violation of Parenting Leave and Accommodations**
**(Minn. Stat. § 181.941 Subd. 3)**

39.     Access North states that Paragraph 39 of Plaintiff's Complaint requires no answer. To the extent an Answer is required, Access North incorporates its preceding responses to the allegations in Paragraphs 1 through 33.

40.     Access North states that the allegations in Paragraph 40 of Plaintiff's Complaint contain legal conclusions to which no response is required. To the extent a response is required, Access North denies any allegation that it violated Minnesota's Parenting Leave Act.

41.     With respect to the allegations in Paragraph 41 of Plaintiff's Complaint, it contains legal conclusions to which no response is required. To the extent a response is required, Access North admits that it terminated Plaintiff and that a termination can be an adverse employment action, but it denies the allegation that its termination of Plaintiff was a violation of Minnesota's Parenting Leave Act.

42.     Access North denies the allegations in Paragraph 42 of Plaintiff's Complaint.

43.     Access North denies the allegations in Paragraph 43 of Plaintiff's Complaint.

**CAUSE OF ACTION V**
**Minnesota OSHA Discrimination**
**(Minn. Stat. § 182.669 Subd. 1)**

44.     Access North states that Paragraph 44 of Plaintiff's Complaint requires no answer. To the extent an Answer is required, Access North incorporates its preceding responses to the allegations in Paragraphs 1 through 43.

45.     Access North states that the allegations in Paragraph 45 of Plaintiff's Complaint contain legal conclusions to which no response is required. To the extent a response is required, Access North denies any allegation that it discriminated against Plaintiff in violation of Minnesota OSHA.

46.     Access North states that the allegations in Paragraph 46 of Plaintiff's Complaint contain legal conclusions to which no response is required. To the extent a response is required, Access North denies any allegation that it violated its obligations under Minnesota OSHA.

47.     Access North states that the allegations in Paragraph 47 of Plaintiff's Complaint contain legal conclusions to which no response is required.  To the extent a response is required, Access North denies any allegation that it violated its obligations under Minnesota OSHA.

48.     Access North states that the allegations in Paragraph 48 of Plaintiff's Complaint contain legal conclusions to which no response is required. To the extent a response is required, Access North denies any allegation that it violated its obligations under Minnesota OSHA.

49.     Access North states that the allegations in Paragraph 49 of Plaintiff's Complaint contain legal conclusions to which no response is required.  To the extent a response is required, Access North denies any allegation that it violated its obligations under Minnesota OSHA.

50.     Access North denies the allegations in Paragraph 50 of Plaintiff's Complaint.

51.     Access North denies the allegations in Paragraph 51 of Plaintiff's Complaint.

52.     Access North denies the allegations in Paragraph 52 of Plaintiff's Complaint.

### CAUSE OF ACTION VI
**Alternatively Expanding the Public Policy Exception to the At-Will Doctrine to Cases Involving Employees Who are Terminated for Abiding by Covid-19 Rules and Regulations**

53.     Access North states that Paragraph 53 of Plaintiff's Complaint requires no answer. To the extent an Answer is required, Access North incorporates its preceding responses to the allegations in Paragraphs 1 through 52.

54.     Access North states that Paragraph 54 of Plaintiff's Complaint requires no answer.

55.     Access North states that the allegations in Paragraph 55 of Plaintiff's Complaint contain legal conclusions to which no response is required.

56. Access North generally admits Paragraph 56 of Plaintiff's Complaint but states that the specific Executive Orders applicable to the relevant time period is a legal conclusion to which no response is required.

57. Access North states that the allegations in Paragraph 57 of Plaintiff's Complaint appear to contain legal conclusions to which no response is required.

58. Access North states that the allegations in Paragraph 58 of Plaintiff's Complaint appear to contain legal conclusions to which no response is required. To the extent a response is required, Access North denies any allegation that it terminated Plaintiff for an improper reason or for anything related to Covid-19 rules or regulations.

Access North generally denies that Plaintiff is entitled to the relief sought in the **WHEREFORE** section Plaintiff's Complaint, and puts Plaintiff to her strict burden of proof.

1. Access North denies that Plaintiff is entitled to the requested relief in Paragraphs 1 through 8 of the Wherefore section of Plaintiff's Complaint.

## AFFIRMATIVE DEFENSES

1. Access North states that Plaintiff's Complaint fails to state, in whole or in part, a claim upon which relief may be granted.

2. Access North states that Plaintiff's Complaint is barred, in whole or in part, by unclean hands, laches, or estoppel.

3. Access North states that Plaintiff's claims, in whole or in part, are time-barred or otherwise barred to the extent Plaintiff was required to and failed to exhaust administrative remedies.

4. Access North states that Plaintiff's Complaint is barred, in whole or in part, by the result of Plaintiff's own misconduct, negligence, comparative fault, or other actions or inactions by her, or by the fault or conduct of other parties, persons, or organizations over whom Access North had no control or responsibility.

5.     Access North states that its actions were based upon legitimate, non-discriminatory business reasons and were not based on any discriminatory or retaliatory motive.

6.     Access North contends that Plaintiff's claims or damages are barred in whole or in part by the after-acquired evidence doctrine.

7.     Access North states that Plaintiff has an obligation to mitigate her claimed damages and her claims may be barred, in whole or in part, because of her failure to take reasonable steps to mitigate her alleged damages.

8.     Access North reserves the right to assert such other defenses, including affirmative defenses, as may become apparent through the course of discovery.

WHEREFORE, Defendant Access North, prays that Plaintiff take nothing by her Complaint, that the same be dismissed with prejudice and on the merits and that Defendant Access North be awarded its costs and disbursements incurred herein and such other relief as the Court deems just and equitable.

Dated: March 18, 2022

LIND, JENSEN, SULLIVAN & PETERSON
A Professional Association


*/s/ William L. Davidson*
William L. Davidson, No. 201777
Lauren M. Hoglund, No. 0399562
Attorneys for Defendant Access North Center
for Independent Living of Northeastern
Minnesota
1300 AT&T Tower
901 Marquette Avenue South
Minneapolis, MN 55402
(612) 333-3637
*william.davidson@lindjensen.com*
*lauren.hoglund@lindjensen.com*


**ACKNOWLEDGMENT**

The undersigned acknowledges that pursuant to Minn. Stat. § 549.211, the Court may award to any opposing party costs, disbursements and reasonable attorneys' fees and witness fees

if the party represented by the undersigned, or the undersigned, acts in bad faith, asserts a claim or defense that is frivolous and costly to the other party, asserts an unfounded position solely to delay the proceedings, or harasses or commits a fraud upon the Court.

*/s/ William L. Davidson*
William L. Davidson